IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACKIE FRITZ, | : | No. 3:21cv1996 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| ALLIED SERVICES FOUNDATION | : | |
| d/b/a ALLIED SERVICES | : | |
| INTEGRATED HEALTH SYSTEM | : | |
| Defendant | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is Defendant Allied Services Foundation d/b/a Allied Services Integrated Health System's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in this employment discrimination matter. (Doc. 10). The motion is fully briefed and ripe for disposition.[1]

**Background**

Plaintiff Jackie Fritz brings this action against her former employer pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611.  In the operative amended complaint, plaintiff alleges that she worked for defendant for twenty-one (21) years as a personal care attendant at an assisted living facility. (Doc. 10

---

[1] The matter was transferred to the undersigned from the Honorable Robert D. Mariani on November 7, 2023.

¶¶ 24-25).  She avers that defendant discriminated against her and harassed her based on being associated with her son, an individual with disabilities.  (Id. ¶ 26). According to the amended complaint, plaintiff's son experiences severe anxiety and symptoms from attention deficit hyperactivity disorder such that he always requires supervision. (Id. ¶¶ 30-32).  Furthermore, plaintiff avers that defendant prevented her from using approved FMLA leave and retaliated against her for attempting to use that leave. (Id. ¶ 26).

According to the amended complaint, plaintiff sought and received intermittent leave pursuant to the FMLA to care for her son beginning in October 2019. (Id. ¶ 33).  When plaintiff handed in paperwork, however, the individual receiving those documents "made a face indicating their clear annoyance regarding the fact that [plaintiff] had a son with disabilities and that she had sought FMLA to care for him." (Id. ¶ 36).  Moreover, plaintiff avers that defendant consistently rejected her attempts to use FMLA leave to care for her son, and she only used one day of leave from the time of approval until the end of her employment. (Id. ¶ 41).  According to plaintiff, her supervisor also insisted that plaintiff work past 7:00 PM despite explanations that her son could not be left unsupervised and did not have supervision after that time. (Id. ¶ 38).  When the supervisor informed plaintiff that she had to stay late, that supervisor "would smirk when telling her, indicating that [the supervisor] knew it would be a problem

2

for [plaintiff], but [the supervisor] compelled her to work late anyway." (Id. ¶ 39).

On two-to-three occasions, plaintiff alleges that she requested to use FMLA

leave, but defendant advised her that she could not use that leave. (Id. ¶ 42).

On July 11, 2020, plaintiff used FMLA leave for the first time.  (Id. ¶ 43).

Her supervisor allegedly sent her a text message that same day stating, "I know

this is the first time you used an FMLA for him[,]" meaning her son. (Id. ¶ 44).

The supervisor further indicated that "since it had been just the one time, then it

'was okay.' " (Id. ¶ 45).  Plaintiff alleges that the supervisor purposely made her

feel guilty for taking FMLA leave and compelled her to make up the day by

working on her day off. (Id. ¶ 47).

Additionally, plaintiff alleges that when she sought to exercise leave, her

supervisor would ask "at the last minute" to stay late or work on her days off. (Id.

¶¶ 50-51).  Per plaintiff, her employer purposefully made these requests when

plaintiff could not work, "as she was only entitled to leave for her usual shift hours

and could not obtain additional FMLA leave time so late." (Id. ¶ 52).  Plaintiff

avers that defendant asked her at least three times per week to stay late,

substantially more than other employees. (Id. ¶ 53).

According to plaintiff, she complained to defendant's human resources

department ("HR") about being restricted from exercising FMLA leave. (Id. ¶ 54).

Plaintiff alleges that she met with an administrator, who told plaintiff that she

could go home, care for her son, and return to work, which plaintiff alleges did not resolve the issues. (Id. ¶¶ 55-56).  After this complaint to HR, defendant continued to insist that plaintiff work during hours when her son would be without supervision. (Id. ¶ 57).

Additionally, against this backdrop, plaintiff alleges that her supervisor would yell at her over minor issues.  (Id. ¶ 60).  Per plaintiff, she would receive text messages at home asking why she did not do a task or why she did not do a task a certain way. (Id. ¶ 61).  Plaintiff alleges that defendant constantly made her feel like she performed her job poorly, and she alleges that she began each day with "trepidation, fear and anxiety, knowing that [d]efendant would torment her in some way." (Id. ¶ 62).  Such acts culminated, per plaintiff, in her constructive discharge on June 23, 2020 when she felt no other choice but to resign. (Id. ¶ 26, 65)

Based on the foregoing facts, plaintiff's amended complaint alleges unlawful discrimination, harassment, and retaliation under the ADA.  Plaintiff also alleges defendant interfered with her attempts to use approved leave under the FMLA and retaliated against her for requesting and taking leave.  Defendant responded with the instant motion to dismiss (Doc. 10), asserting that: 1) plaintiff's ADA association claim fails as a matter of law; 2) plaintiff failed to allege sufficient facts to support an FMLA interference claim; and 3) plaintiff cannot

state a claim for retaliation under either of these statutes. Having been fully briefed, this matter is ripe for disposition.

**Jurisdiction**

Based on the alleged violations of federal law, this court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Additionally, the court has jurisdiction under 28 U.S.C. § 1343(a)(3), which confers jurisdiction of any action commenced to redress the deprivation of any right, privilege, or immunity secured by federal law providing for the equal rights of citizens.

**Legal Standard**

Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]' " and a claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly at 555).

**Analysis**

Defendant moves to dismiss plaintiff's association and retaliation claims under the ADA as well as plaintiff's claims for interference and retaliation under the FMLA.  The court will address plaintiff's ADA claims first before moving on to the FMLA claims.

**1. Plaintiff's ADA Association Discrimination Claim**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The term "discriminate against a qualified individual on the basis of disability" includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).  Claims based on this provision are referred to as ADA association or ADA association discrimination claims.  See Erdman v. Nationwide Ins. Co., 582 F.3d 500, 504 (3d Cir. 2009); Barthalow v.

6

David H. Martin Excavating, Inc., No. 1:05-CV-2593, 2007 WL 2207897, at *3
(M.D. Pa. July 30, 2007)(Rambo, J).

The ADA association provision, 42 U.S.C. § 12112(b)(4), however, "does
not obligate employers to accommodate the schedule of an employee with a
disabled relative[,]" like the reasonable accommodations provisions set forth at
42 U.S.C. § 12112(b)(5)(A)-(B).  See Erdman, 582 F.3d at 510 ("Although refusal
to 'mak[e] reasonable accommodations' may constitute illegal discrimination
against a disabled *employee*, 42 U.S.C. § 12112(b)(5), the plain language of the
ADA indicates that the accommodation requirement does not extend to *relatives*
of the disabled.")(emphasis in original)(further citations omitted).

Furthermore, to establish a *prima facie* case of association discrimination, a
plaintiff must prove the following:

> (1) the plaintiff was "qualified" for the job at the time of the
> adverse employment action;
>
> (2) the plaintiff was subjected to adverse employment
> action;
>
> (3) the plaintiff was known by her employer at the time to
> have a relative or associate with a disability; [and]
>
> (4) the adverse employment action occurred under
> circumstances raising a reasonable inference that the
> disability of the relative or associate was a determining
> factor in the employer's decision.

Dodson v. Coatesville Hosp. Corp., 773 F. App'x 78, 83, n. 8 (3d Cir. 2019)(citing
Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997)(further

citation omitted); <u>see also</u> <u>Erdman v. Nationwide Ins. Co.</u>, 621 F. Supp. 2d 230, 234 (M.D. Pa. 2007), <u>aff'd in part, vacated in part</u>, 582 F.3d 500 (3d Cir. 2009)(citations omitted).

In the instant motion, defendant argues that plaintiff fails to properly allege an adverse employment action.  Defendant also argues that plaintiff is precluded from recovery as a matter of law because her claim is premised on defendant not providing her with scheduling accommodations.  The court discusses each of these arguments in turn.

### a. Adverse Employment Action

Defendant argues that plaintiff has not adequately alleged constructive discharge and thus she experienced no adverse employment action.  The court disagrees.

Constructive discharge equates to an employee's reasonable decision to resign because of unendurable working conditions and "is assimilated to formal discharge for remedial purposes." <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129, 141 (2004).  The inquiry into constructive discharge is objective: "whether the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." <u>Clowes v. Allegheny Valley Hosp.</u>, 991 F.2d 1159, 1161 (3d Cir. 1993)(citations omitted and internal quotation marks removed).  Factors relevant to this issue are whether the employer: "(1)

threatened the employee with discharge or urged or suggested that she resign or retire, (2) demoted her, (3) reduced her pay or benefits, (4) involuntarily transferred her to a less desirable position, (5) altered her job responsibilities, or (6) gave unsatisfactory job evaluations." Colwell v. Rite Aid Corp., 602 F.3d 495, 503 (3d Cir. 2010)(citing Clowes, 991 F.2d at 1161)(internal quotation marks and brackets removed).  The absence of these factors is not necessarily dispositive. Duffy v. Paper Magic Grp., Inc., 265 F.3d 163, 168 (3d Cir. 2001).  "[T]he law[,]" however, "does not permit an employee's subjective perceptions to govern a claim of constructive discharge."  Clowes, 991 F.2d at 1162 (quoting Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir.1992)(further citation omitted).

Defendant argues that plaintiff cannot meet the "unendurable working conditions" threshold based on the facts pled.  Furthermore, in arguing for dismissal, defendant hones in on plaintiff's subjective feelings about her work conditions as alleged.  Understanding that the factual record is not developed, defendant's argument is ultimately not persuasive.  See Stremple v. Nicholson, 289 F. App'x 571, 574 (3d Cir. 2008)(citing Levendos v. Stern Entm't, Inc., 860 F.2d 1227, 1230 (3d Cir.1988)("Constructive discharge is a heavily fact-driven determination.").

First, an employee filing an employment discrimination lawsuit may only be able to aver facial expressions, body language, and their intuition to support

allegations before any substantive discovery occurs.  (See Doc. 9 at ¶¶ 38-39).

Second, plaintiff's amended complaint pleads both her subjective perceptions of

defendant's conduct and facts supporting an objective evaluation of her

circumstances under a reasonable person standard.  For example, while plaintiff

alleges that her supervisor made her feel guilty for caring for her son, plaintiff

also avers that the supervisor yelled at her during the workday about "minor

issues[,]" and texted plaintiff during off-hours with messages critical of plaintiff's

work. (Id. at ¶¶ 47, 60-61).  This alleged blurring of work and life boundaries

caused plaintiff, per her allegations, to start each day with trepidation, fear, and

anxiety with the belief that defendant's agents would torment her in some way.

(Id. at ¶ 62).  Accordingly, plaintiff's constructive discharge allegations are

plausible on the facts alleged, and the motion to dismiss based on these grounds

will be denied.

### b. Reasonable Inferences that the Association Was a Determining Factor

Defendant also argues that plaintiff's amended complaint fails to set forth

the fourth element of a *prima facie* ADA association claim, that is, the adverse

employment action occurred under circumstances raising a reasonable inference

that the disability of the relative was a determining factor in the employer's

decision.  Focusing on this element, the ADA statute "clearly refers to adverse

employment actions motivated by 'the known disability of an individual' with

whom an employee associates, as opposed to actions occasioned by the association." Erdman, 582 F.3d at 510. "Under the association provision, there is a material distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative." Id. Consequently, a plaintiff must demonstrate that the relative's disability motivated the employer rather than the plaintiff's stated intention to miss work. See id. (citations omitted). In light of this discussion in Erdman, Defendant argues that plaintiff's claim fails as a matter of law because the amended complaint only asserts an association claim based on defendant's failure to accommodate plaintiff's scheduling requests so she could care for her son. (Doc. 11 at 7).

Erdman, however, is not dispositive at this stage under the facts pled.[2] As summarized, "[a]n employee would be protected by the association provision if she were fired because her employer feared that she *might* miss work to care for a disabled relative even though she had not taken or requested time off." Erdman, 582 F.3d at 510-11 (citations omitted)(emphasis in original). Additionally, "a decision motivated by unfounded stereotypes or assumptions

---

[2] Additionally, Erdman affirmed summary judgment where the record only revealed that an employer fired a plaintiff after she announced her intention to take FMLA leave to care for her child's disability and not that her employer was motivated to terminate plaintiff based on her association with her disabled child. 582 F.3d at 511. That full record is not available here on a motion to dismiss.

about the need to care for a disabled person may be fairly construed as 'because of the ... disability' itself[,]" subjecting an employer to liability.  Id. at 511 (3d Cir. 2009)(citing 42 U.S.C. § 12112(b)(4), 29 C.F.R. § 1630.8, Appendix).  Like constructive discharge, association discrimination claims are context-driven and "the standard is highly sensitive to the particular facts of a case." Pollere v. USIG Pennsylvania, Inc., 136 F. Supp. 3d 680, 685 (E.D. Pa. 2015)(collecting cases).

In this matter, plaintiff pleads enough facts to state a plausible claim for relief under the ADA association provision when the complaint is read as a whole. For example, plaintiff's amended complaint avers that defendant expressed displeasure, frustration, and annoyance with the fact that she had a child with disabilities. (Doc. 9 at ¶¶ 35-36).  Defendant also asked plaintiff, more often than others and often last minute, to stay late or work overtime and work on scheduled days off knowing of plaintiff's association with a child with disabilities. (Id. at ¶¶ 38, 44-45, 51, 53).  As noted above, plaintiff's supervisor would allegedly make these requests with a smirk and in a manner that made plaintiff feel guilty. (Id. at ¶¶ 38, 47).  Plaintiff also alleges that her supervisor became critical of her work and would text plaintiff during off-hours with these criticisms. Per plaintiff, defendant wanted plaintiff to work more often than other employees and made plaintiff's work-life intolerable because of plaintiff's association with her son. (Id. at ¶¶ 59-61).  These allegations raise reasonable inferences that

plaintiff's son's disability was a determining factor in defendant's acts.  Thus, defendant's motion to dismiss plaintiff's ADA association discrimination claim will be denied.

### 2. Plaintiff's ADA Retaliation Claim

Defendant also moves to dismiss plaintiff's claim for retaliation under the ADA based on her association with her son.  The ADA's anti-retaliation provision provides, in relevant part, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA.  42 U.S.C. § 12203(a).

To establish a *prima facie* case of retaliation, a plaintiff must prove: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567–68 (3d Cir. 2002)(citation omitted).

Regarding protected activity, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003).  Furthermore, "[t]he Third Circuit has established that 'protesting what an employee believes in good faith to be a discriminatory

13

practice is clearly protected conduct.' " Tyson v. Access Servs., 158 F. Supp. 3d 309, 315 (E.D. Pa. 2016)(quoting Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996)).

Although the ADA association provision does not obligate employers to accommodate the schedule of an employee with a disabled relative, see Erdman, 582 F.3d at 510, that same provision makes it unlawful for employers to exclude or otherwise deny equal benefits to a qualified individual because of her known association or relationship with an individual with a disability, 42 U.S.C. § 12112(b)(4).  Per the amended complaint, plaintiff explained to her employer that she had a son with disabilities that required round-the-clock supervision. (Doc. 9 at ¶§ 34, 38).  After receiving treatment she alleges was unfair or unequal because her son has disabilities, plaintiff made a complaint to defendant's HR department. (Id. at ¶¶ 39, 50-56).  Subsequently, she alleges that the unequal treatment continued and that her supervisor contacted her about work issues by text while plaintiff cared for her son at home. (Id. at ¶¶ 57, 61).  In review, plaintiff's amended complaint sufficiently avers protected activity.  The court also concludes, as noted above, that plaintiff alleged sufficient facts to plausibly state her constructive discharge.  Finally, plaintiff's averments provide enough factual basis for a causal connection between the protected activity and her constructive

discharge.  Thus, plaintiff's motion to dismiss plaintiff's ADA retaliation claim will be denied.

### 3. Plaintiff's FMLA Interference Claim

Turning next to plaintiff's FMLA claims, defendant argues that she has not alleged sufficient facts to support recovery under its provisions. The court will first address plaintiff's claim for FMLA interference before considering her retaliation claim.

The FMLA entitles employees to take reasonable leave for the care of a child with a serious medical condition, specifically a "total of 12 workweeks of leave during any 12-month period[.]"  29 U.S.C. §§ 2601(b)(2), 2612(a)(1)(C). Leave taken pursuant to Section 2612(a)(1)(C), "may be taken intermittently or on a reduced leave schedule when medically necessary[,]" subject to other provisions regarding alternative positions, duties of the employee, and certification from a health care provider.  29 U.S.C. § 2612(b)(1).  Further, the FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the statute.  29 U.S.C. § 2615.  Interference with an employee's rights includes refusing to authorize FLMA leave and discouraging employes from using such leave. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 142 (3d Cir. 2004)(citing 29 C.F.R. § 825.220(b)).

15

To make a claim of interference under the FMLA, a plaintiff must establish:

> (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017)(citing Ross v. Gilhuly, 755 F.3d 185, 191 (3d Cir. 2014))(further citation omitted).  Put more succinctly, a plaintiff asserting an interference claim under the FMLA need only show that "[s]he was entitled to benefits under the FMLA and that [s]he was denied them." Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).  Additionally, "a plaintiff may have an actionable FMLA interference claim where the employer takes any action that could chill desire to take FMLA leave, even when the employee takes the leave." Kimes v. Univ. of Scranton, 126 F. Supp. 3d 477, 501 (M.D. Pa. 2015)(citing Grosso v. Fed. Exp. Corp., 467 F.Supp.2d 449, 463 (E.D. Pa. 2006), Sherrod v. Phila. Gas Works, 57 Fed.Appx. 68, 73 n. 6 (3d Cir. 2003)) (internal quotation marks omitted).

Defendant moves to dismiss plaintiff's interference claim arguing that plaintiff did not aver whether she gave proper notice before seeking to exercise FMLA leave.  Defendant's assertions about proper notice fall short on a motion to

16

dismiss, as defendant seeks to have this court rule on a defense before the complaint is answered.

"[I]n order to invoke FMLA protection, an employee must first notify her employer of her need for leave." Scott v. UPMC, 435 F.App'x 104, 107 (3d Cir. 2011). "Proper notice" requires a fact-intensive inquiry into the circumstances of the plaintiff's requests based upon the language used in regulations promulgated by the Department of Labor. See 29 C.F.R. § 825.302(a)("Whether FMLA leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown."); 29 C.F.R. § 825.302(b)(" In all cases, however, the determination of when an employee could practicably provide notice must take into account the individual facts and circumstances."); see also 29 C.F.R. § 825.304(c),(d).

Additionally, as for the form of notice, "[s]imple verbal notification is sufficient" and an employee "need not use any magic words." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007)(discussing 29 C.F.R. § 825.302(c)). "The critical question is how the information conveyed to the employer is reasonably interpreted. An employee who does not cite to the FMLA or provide the exact dates or duration of the leave requested nonetheless may

17

have provided his employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA." Id.

Plaintiff's amended complaint sets forth that defendant permitted her to use only one day of FMLA leave between October 2019 and June 2020 as defendant "consistently rejected [plaintiff's] other attempts to use FMLA leave to care for her son." (Doc. 9 at ¶¶ 41, 43).  Moreover, plaintiff alleges she requested leave on two-to-three occasions but defendant told her that she could not do so. (Id. at ¶ 42).  Plaintiff also specifically pleads receipt of a text message from her supervisor about using FMLA leave on the only day she used leave to care for her son, June 11, 2020.  (Id. at ¶ 44).  Per plaintiff, that supervisor recognized plaintiff's use of that one day of FMLA leave and advised plaintiff that she needed to make up the time used for FMLA leave.  These averments are sufficient to state a claim for FMLA interference and any questions about proper or improper notice cannot be resolved without a factual record.  Thus, defendant's motion to dismiss plaintiff's FMLA interference claim will be denied.

### 4. Plaintiff's FMLA Retaliation Claim

Finally, defendant moves to dismiss plaintiff's FMLA retaliation claim. FMLA retaliation claims require proof of the employer's retaliatory intent and are

18

assessed through the familiar <u>McDonnell Douglas</u>[3] burden shifting framework. <u>Capps</u>, 847 F.3d at 151 (citations omitted).  To prevail on an FMLA retaliation claim, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. <u>Id.</u> at 151, n. 6 (citations omitted); <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 301–02 (3d Cir. 2012)(citing <u>Erdman</u>, 582 F.3d at 508–09).

Defendant likewise challenges whether plaintiff sufficiently and plausibly sets forth constructive discharge as an adverse employment decision in her amended complaint.  For the reasons set forth above in section 1a and section 2 above, plaintiff's constructive discharge allegations are plausible.  Thus, defendant's motion to dismiss plaintiff's FMLA retaliation claim will be denied.

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss (Doc. 10) will be denied.  An appropriate order follows.

---

[3] <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

Date: _____          _____
                                        JUDGE JULIA K. MUNLEY
                                        United States District Court